IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRENT VANDERZEE, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO MEDICAL CENTER, an Illinois corporation doing business as UCHICAGO MEDICINE,<br><br>Defendant. | Case No. 25-cv-02207<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

The University of Chicago Medical Center ("UChicago Medicine") moves to compel arbitration and stay proceedings in this putative class action brought by Trent Vanderzee ("Plaintiff") under various state law claims. For the reasons stated herein, the motion to compel arbitration and stay proceedings [16], [18] is denied.

**I. Background**

In 2017, Plaintiff's daughter ("V.V.") was implanted at UChicago Medicine with a HiRes Ultra cochlear implant device manufactured by Advanced Bionics, LLC ("Advanced Bionics"). [1-1] at 6–28 (Plaintiff's Class Action Complaint, "Complaint") ¶ 34. In February 2020, Advanced Bionics announced a recall of its HiRes Ultra cochlear implant model. *Id.* ¶¶ 35–36. Pursuant to its warranty obligations, Advanced Bionics provided a no-cost replacement cochlear implant device to V.V., which was delivered to UChicago Medicine around March 18, 2022. *Id.* ¶¶ 38–39. Around March

1

22, 2022, V.V. underwent surgery at UChicago Medicine in which her original cochlear implant device was removed and replaced with the replacement cochlear implant device. *Id.* ¶ 39. Plaintiff claims that despite having received the replacement cochlear implant device from Advanced Bionics at no cost, UChicago Medicine charged him for the full retail price of the replacement cochlear implant device. *Id.* ¶ 42. This, he alleges, caused him financial harm, including inflated out-of-pocket expenses after insurance. *Id.* ¶ 47.

Relevant here, in 2012, UChicago Medicine and Plaintiff's health insurer ("Payer") entered into a Facility Participation Agreement. [18-1] ¶¶ 5–6 (Declaration of Anthony Navarra, "Navarra Decl."); [18-1], Ex. A (Facility Participation Agreement, "Facility Agreement"). At the time of V.V.'s replacement surgery, Plaintiff and V.V. were members of a health insurance plan governed by the Facility Agreement. Navarra Decl. ¶¶ 7–8.

Article VII—titled "Dispute Resolution"—of the Facility Agreement contains provisions addressing arbitration and class-actions. Facility Agreement at 14–15. The first two paragraphs of Article VII read as follows:

> The parties will work together in good faith to resolve any disputes between them (hereinafter referred to as "Disputes") including but not limited to all questions of arbitrability, the existence, validity or scope of the Agreement or any term thereof.
>
> If the parties are unable to resolve any such Dispute within 60 days following the date one party sent written notice of the Dispute to the other party, and if either party wishes to pursue the Dispute, it shall thereafter be submitted to binding arbitration before a panel of three arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association, as they may be amended from time to time (see http://www.adr.org). Unless otherwise agreed to in

2

> writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one year after the date on which notice of the Dispute was given or shall be deemed to have waived its right to pursue the dispute in any forum.

*Id.* at 14.

Paragraph four of Article VII further provides that:

> The parties expressly intend that any dispute relating to the business relationship between them be resolved on an individual basis so that no other dispute with any third party(ies) may be consolidated or joined with the dispute. The parties agree that any arbitration ruling by an arbitrator allowing class action arbitration or requiring consolidated arbitration involving any third party(ies) would be contrary to their intent and would require immediate judicial review of such ruling.

*Id.* at 14–15.

On January 28, 2025, Plaintiff filed this lawsuit, on behalf of himself and those similarly situated, in the Circuit Court of Cook County, Illinois. *See* Complaint. He alleges that UChicago Medicine violated the Illinois Consumer Fraud and Deceptive Business Practices Act, engaged in common law fraud and unjust enrichment, and received payments under mistake of fact by overcharging for warranty replacement medical devices. Complaint ¶¶ 73–102. On March 3, 2025, UChicago Medicine removed the case to this Court. [1].

On April 9, 2025, UChicago Medicine filed the instant motion to compel arbitration and stay proceedings, asserting that the arbitration provision in Article VII of the Facility Agreement requires Plaintiff to arbitrate his claims. [16], [18]. That same day, UChicago Medicine filed a motion to dismiss Plaintiff's complaint. [19]. On April 14, 2025, the Court explained that it would rule on the arbitration issue prior

3

to the motion to dismiss and thus, for administrative reasons, struck UChicago Medicine's motion to dismiss without prejudice. [21].

## II. Standard

Under the Federal Arbitration Act ("FAA"), "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). It reflects a "liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places "arbitration agreements on an equal footing with other contracts," *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Concepcion*, 563 U.S. at 339). "When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco Rest., Inc. v. Steak N Shake Enterp., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 619 (7th Cir. 2021) (cleaned up).

Under the FAA, in response to a party's refusal to arbitrate despite a written agreement for arbitration, the opposing party "may petition any United States

4

district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The party seeking to compel arbitration bears the burden to show an agreement to arbitrate. *Id.*; *see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). "The court may consider exhibits and affidavits regarding the arbitration agreement in question." *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018). Once the moving party makes its initial showing, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* As with summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4).

### III. Analysis

UChicago Medicine argues that this lawsuit must be submitted to arbitration pursuant to the arbitration provision in Article VII of the Facility Agreement. Though

5

Plaintiff is not a signatory to the Facility Agreement[1], UChicago Medicine argues that Plaintiff is a third-party beneficiary of the Facility Agreement and is thus subject to the arbitration provision thereof. In the alternative, UChicago Medicine contends that equitable estoppel precludes Plaintiff's avoidance of the arbitration provision. Plaintiff argues that as a non-party he is not bound by the arbitration provision and UChicago Medicine cannot overcome this fact by invoking the doctrines of third-party beneficiary and equitable estoppel.

Generally, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). This rule, however, has its exceptions, which are governed by "traditional principles of state law." *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Illinois law[2] recognizes several such exceptions. *Equistar Chemicals, LP v. Hartford Steam Boiler Inspection & Ins. Co. of Connecticut*, 379 Ill. App. 3d 771, 318 Ill.Dec. 509, 883 N.E.2d 740, 747 (2008) (listing exceptions).

---

[1] UChicago Medicine points out that Plaintiff seeks to certify a class that includes his health insurer, which is a party to the Facility Agreement. While that may be true, there is "no right to compel arbitration against putative class members until class certification has been granted and the notice and opt-out period are complete." *Odell v. CVS Pharmacy, Inc.,* No. 22 CV 3318, 2023 WL 8527440, at *3 (N.D. Ill. Dec. 9, 2023). At this point in the litigation, the putative class remains uncertified. The instant motion, therefore, can only be considered with respect to Mr. Vanderzee.

[2] As the parties did not raise a choice of law issue, and because both parties rely on Illinois law in their briefing, the court applies Illinois law. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.").

Of relevance here are the "third-party beneficiary" and "equitable estoppel" exceptions. The Court addresses each of these in turn.

### A. Third-Party Beneficiary

While Plaintiff is not a party to the Facility Agreement, UChicago Medicine asserts that Plaintiff is a third-party beneficiary to the agreement and is thus bound by the arbitration provision in Article VII. The Court disagrees.

In Illinois, "there is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties." *Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 334 (7th Cir. 1999) (quoting *155 Harbor Drive Condominium Ass'n v. Harbor Point, Inc.*, 209 Ill.App.3d 631, 154 Ill.Dec. 365, 568 N.E.2d 365, 375 (1991)) (emphasis in original). Nevertheless, that presumption can overcome where "the implication that the contract applies to third parties [is] so strong as to be practically an express declaration." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021) (quoting *155 Harbor Drive*, 209 Ill.App.3d 631, 154 Ill.Dec. 365, 568 N.E.2d at 375). Merely showing that the "parties know, expect, or even intend that others will benefit from the agreement" is insufficient to overcome the presumption against third-party beneficiaries. *Id.* (quoting *Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 427 Ill.Dec. 218, 117 N.E.3d 1155, 1159 (Ill. App. Ct. 2018)). "Instead, for a nonparty to qualify as a third-party beneficiary, the language of the contract must show that 'the contract was made for the direct, not merely incidental, benefit of the third person.'" *Id.* (quoting *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill.App.3d 1017, 329 Ill.Dec. 82, 905 N.E.2d 920, 924 (2009)).

7

Such an intention "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Id*.

The parties vigorously debate whether the Facility Agreement was made with an intent to confer direct benefits onto Plaintiff. UChicago Medicine contends that it was, pointing to, among other things, the "Customer Hold Harmless" and "Customer [P]rotection [R]equirements" provisions in Article VI as evidence that the Facility Agreement directly benefits Plaintiff. Facility Agreement, §§ 6.8–6.9. Conversely, Plaintiff contends he is not an intended beneficiary, pointing to, among other things, the "No Third-Party Beneficiaries" provision in Article IX. Facility Agreement, § 9.6.

The Court need not wade into this debate. Even if the Court finds that UChicago Medicine and Payer intended the Facility Agreement to confer direct benefits onto Plaintiff, UChicago Medicine would still be unable to compel Plaintiff to arbitrate based on the language of the arbitration provision here. As explained by the Seventh Circuit in *Coatney*, a non-party can only be compelled to arbitrate where it is shown that the signatories to the agreement intended the non- party to derive a benefit from the agreement and *"where the arbitration clause itself is susceptible to this interpretation."* 93 F.4th at 1024 (quoting *Johnson v. Noble,* 240 Ill.App.3d 731, 181 Ill.Dec. 464, 608 N.E.2d 537, 541 (1992)) (emphasis added); *see also Premovic v. Northshore Univ. Health Sys.*, 2015 IL App (1st) 133466-U, 2015 WL 71708, at *4 (Ill. App. Ct. 2015). In other words, merely showing that the Facility Agreement was made with an intent to confer direct benefits onto Plaintiff is insufficient to compel

8

arbitration if the arbitration provision itself does not "contain language capturing the plaintiff[]." *Coatney*, 93 F.4th at 1025. Upon review, the Court finds that the arbitration provision in the Facility Agreement does not benefit Plaintiff. The language of the arbitration provision limits its applicability to "the parties." Facility Agreement at 14 ("[t]he parties will work together …); *id*. ("[i]f the parties are unable to resolve …). The "parties" to the Facility Agreement are UChicago Medicine and Payer, not Plaintiff. *Id*. at 1. The arbitration provision in fact excludes "third party(ies)" (like Plaintiff) from "dispute[s] relating to the business relationship between" UChicago Medicine and Payer. *Id*. The arbitration provision also contains a written notice requirement. *Id*. However, only UChicago Medicine and Payer's addresses are provided. *Id*. at 19.

Perhaps most significantly—and a fact that Plaintiff points out—the arbitration provision contains no "Customer-specific" language. That absence is critical. The term "Customer" (which UChicago Medicine contends refers to health insurance plan members such as Plaintiff) is referenced almost 90 times in the Facility Agreement. Yet Article VII contains no references to "Customer." The omission of "Customer" from Article VII is a strong indication that UChicago Medicine and Payer did not intend to bind Plaintiff to arbitration. *Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 204 Ill.Dec. 527, 641 N.E.2d 957, 962 (1994) ("[t]here is a strong presumption against provisions that easily could have been included in the contract but were not."); *id*. ("[a] court will not add another term about which an agreement is silent.").

9

For these reasons, the Court rejects UChicago Medicine's third-party beneficiary theory as a basis to compel Plaintiff to arbitrate this lawsuit.

### B. Equitable Estoppel

In the alternative to its third-party beneficiary theory, UChicago Medicine asserts that equitable estoppel requires Plaintiff to arbitrate. The Court disagrees.

As a preliminary matter, the Court notes that the parties' briefing presents two types of equitable estoppel. The first type—a more traditional form of estoppel—holds that "[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." *Sosa*, 8 F.4th at 641 (quoting *Ervin v. Nokia, Inc.*, 349 Ill.App.3d 508, 285 Ill.Dec. 714, 812 N.E.2d 534, 541 (2004)). "The party bringing an equitable estoppel claim 'must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable.'" *Id*.

With respect to this type of estoppel, Plaintiff argues that UChicago Medicine fails to offer any evidence of detrimental reliance. The Court agrees: there is no evidence that UChicago Medicine reasonably "relied upon the acts or representations of" Plaintiff to its detriment. *Id*. The first type of estoppel is thus inapplicable here.

The second type of estoppel presented is different and does not require a showing of detrimental reliance. Known as "direct benefits estoppel," this doctrine holds that a non-signatory "is estopped from avoiding arbitration if [he] 'knowingly seeks the benefits of the contract containing the arbitration clause.'" *American Economy*

10

*Insurance Co. v. Accelerated Rehabilitation Centers, Ltd.*, 2022 IL App (1st) 211410-U, 2022 WL 4593066, at *5 (Ill. App. Ct. 2022) (quoting *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 383 (7th Cir. 2014)). The benefit received by the non-signatory "must flow directly from the agreement." *Id.* "[A] benefit derived from the agreement itself is direct. However, a benefit derived from the exploitation of the contractual relationship of parties to an agreement, but not the agreement itself, is indirect." *Id.* (cleaned up).

The parties disagree on whether Plaintiff sought and received a direct benefit from the Facility Agreement.[3] UChicago Medicine contends that he did, arguing that payment to Plaintiff by Payer for services rendered to V.V. by UChicago Medicine is a direct benefit pursuant to the Facility Agreement[4]. Plaintiff argues that any benefits he may have received from the Facility Agreement were incidental and cannot give rise to estoppel.

---

[3] This inquiry differs from whether Plaintiff is a third-party beneficiary. The former asks whether Plaintiff knowingly sought and received a direct benefit from the Facility Agreement. *Everett*, 771 F.3d at 383. The later asks whether the parties to the contract intended to confer a direct benefit onto Plaintiff. *155 Harbor Drive*, 209 Ill.App.3d 631, 154 Ill.Dec. 365, 568 N.E.2d at 374.

[4] While UChicago Medicine contends that the Facility Agreement provides other benefits to Plaintiff (*e.g.*, the "Customer Hold Harmless" provision), it gives no evidence that Plaintiff actually sought and received those other benefits. Such a showing is a prerequisite for direct benefits estoppel. *Coatney*, 93 F.4th at 1027 (noting no Illinois authority presented to support "the application of estoppel where a non-signatory has access to a benefit but there are no allegations or evidence that she has in fact accessed it."); *American Economy* 2022 WL 4593066, at *5 (rejecting direct benefits estoppel where there was no evidence plaintiffs actually "received benefits flowing directly from the agreements between the TPAs and defendants.").

11

The Court finds that Plaintiff did not receive a direct benefit from the Facility Agreement. The payment to Plaintiff by Payer for services rendered to V.V. by UChicago Medicine stems not from the Facility Agreement but from Plaintiff's "Benefit Plan" with Payer. Facility Agreement, § 1.1 (defining "Benefit Plan" as a contract "under which a Payer is obligated to provide coverage of Covered Services for a Customer."); *id.*, § 1.6 (defining "Payer" as "an entity obligated to a Customer to provide reimbursement for Covered Services under the Customer's Benefit Plan."). While Plaintiff was able to use his insurance at UChicago Medicine due to the Facility Agreement, the ultimate benefit he received—insurance coverage for V.V.'s surgery— "flowed from [his] ability to exploit the contractual relationship between" UChicago and Payer, not the Facility Agreement itself. *American Economy,* 2022 WL 4593066, at *5. Moreover, Plaintiff has not asserted any rights under the Facility Agreement in this lawsuit. His counts against UChicago Medicine are under the Illinois Consumer Fraud and Deceptive Business Practices Act, common law fraud, unjust enrichment, and payment under mistake of fact, none of which seek to enforce the terms of the Facility Agreement against UChicago Medicine. This further compels a finding that Plaintiff is not seeking a direct benefit from the Facility Agreement. *See Coatney*, 93 F.4th at 1028 ("[t]he grounds Illinois courts have recognized that might allow direct benefits estoppel are not present" where plaintiffs do not seek to enforce the terms of the contract with the arbitration clause against the defendant).

Two additional factors persuade the Court that direct benefits estoppel does not apply. The first comes from the standard itself: a non-signatory is estopped from

12

avoiding arbitration only if he "*knowingly* seeks the benefits of the contract containing the arbitration clause." *American Economy*, 2022 WL 4593066, at *5 (quoting *Everett*, 771 F.3d at 383) (emphasis added). Here, Plaintiff first became aware of the Facility Agreement when UChicago Medicine filed the instant motion to compel. He thus could not have "knowingly" sought the benefits of the Facility Agreement. To find that Plaintiff is nonetheless estopped from avoiding arbitration despite this lack of knowledge would greatly expand the doctrine of direct benefits estoppel. Given the general presumption under Illinois law disfavoring binding non-parties to arbitration, the Court refuses to make such a wide-reaching expansion. *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 750 (7th Cir. 1999) ("[a]s a federal court, we are reluctant to expand the law of a state in a manner that, while perhaps logical, is not clearly in line with the state's existing thinking on the subject.").

The second is that UChicago Medicine has failed to identify—and the Court has not found—any Illinois Appellate Court or Illinois Supreme Court decision compelling a non-signatory to arbitrate based on the doctrine of direct benefit estoppel. The absence of such authority suggests that Illinois courts would not embrace the application of direct benefits estoppel as UChicago Medicine requests here. *See Coatney*, 93 F.4th at 1025 (noting the same).

The Court thus rejects UChicago Medicine's direct benefits estoppel theory as a basis to compel Plaintiff to arbitrate this lawsuit.

IV. **Conclusion**

13

Because Plaintiff cannot be compelled to arbitrate under the Facility Agreement[5], UChicago Medicine's motion to compel arbitration and stay proceedings [16], [18] is denied. The Court sets an in-person status hearing on October 22, 2025 at 9:30 AM to discuss a briefing schedule for UChicago Medicine's motion to dismiss.

E N T E R:

Dated: September 29, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[5] As the Court finds that Plaintiff cannot be compelled to arbitrate, the Court need not address the parties' arguments regarding delegation of arbitrability.

14